## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| WTE RECYCLING, INC., | ) |
| Defendant. | ) |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action brought against wTe Recycling, Inc. ("WTE") pursuant to Sections 113(a) and (b) of the Clean Air Act ("Act"), 42 U.S.C. §§ 7413(a) and (b), seeking injunctive relief and civil penalties.

2. The claims alleged herein arise from: (a) WTE's change in the method of operation of its facility located at 75 Southern Avenue in Greenfield, Massachusetts (the "Facility"), which constituted a substantial reconstruction under the Massachusetts State Implementation Plan ("SIP"), codified at 310 Code of Massachusetts Regulations ("CMR") 7.00 *et seq.*, and which resulted in excess volatile organic compound ("VOC") emissions above applicable emissions thresholds, without obtaining a plan approval from the Massachusetts Department of Environmental Protection ("MassDEP") authorizing this change in operation in accordance with the SIP, and without installing best available control technology ("BACT") to

control those VOC emissions; (b) WTE's operation of its Facility without an approved reasonably available control technology ("RACT") control plan as required under 310 CMR 7.18(17) for facilities with the potential to emit ("PTE"), prior to the application of air pollution control equipment, 25 tons per year or more of VOCs; (c) WTE's failure to comply with emissions, performance testing/compliance demonstration, notification, monitoring, recordkeeping, and reporting requirements prescribed by the National Emission Standards for Hazardous Air Pollutants for stationary reciprocating internal combustion engines ("RICE NESHAP"), 40 C.F.R. Part 63, Subpart ZZZZ; and (d) WTE's operation of the Facility, since May 15, 1997, without having applied for or obtained a Title V operating permit or an Restricted Emission Status ("RES") synthetic minor permit, in violation of the Title V permit provisions of the Act, 42 U.S.C. §§ 7661 through 7661f, and 310 CMR 7.00, Appendix C.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b).

4. Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because WTE is located in this District and because the alleged violations occurred in this District.

## NOTICE

5. Notice of the nonattainment New Source Review violations alleged herein was provided to WTE and MassDEP more than 30 days prior to the filing of this action, as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

6. Notice of commencement of this action has or will be been given to the MassDEP, as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## DEFENDANT

7. WTE is a Massachusetts corporation residing in Greenfield, Franklin County, Massachusetts. It operates the Facility as a metals recycling business.

8. WTE is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

9. At all times relevant to this action, WTE was and continues to be an "owner" and "operator" of the Facility, within the meaning of Section 113(b) of the Act, 42 U.S.C. § 7413(b), and the SIP.

## GENERAL ALLEGATIONS

10. The Facility is an industrial metals recycling facility where WTE shreds automobiles, municipal ferrous and non-ferrous materials ("Muni"), and post-incineration ferrous ("PIF") materials. The Facility has been owned and operated by WTE since 1990.

11. On June 5, 1991, MassDEP inspectors discovered that WTE had changed its method of operation by accepting Muni and PIF as feedstocks for its shredding operations at the Facility ("1991 Change").

12. On May 13, 2015, EPA conducted a compliance inspection of the Facility, and on June 4, 2015, it issued a Reporting Requirement and Testing Order ("RR/TO") to WTE under Section 114 of the Act, requiring WTE to conduct performance testing of the shredder operations to measure emissions of particulate matter, VOCs, and hazardous air pollutants ("HAP"). WTE conducted the required testing in November 2015.

3

13.     On February 3, 2016, EPA issued a second Reporting Requirement to WTE under Section 114 of the Act requesting information about several stationary diesel internal combustion engines used at the Facility.  WTE submitted its written response to the second Reporting Requirement, on March 14, 2016.

14.     Based on emission factors determined during the November 2015 testing as applied to the actual throughput data from the Facility shredding operation in calendar year 2011, the Facility had actual VOC emissions of approximately 68 tons per year ("tpy") in 2011.  When applied to the Facility's operational limits, the November 2015 test data also establish that the Facility's potential to emit ("PTE") VOC emissions are approximately 169 tpy.

15.     The VOC emissions levels reflected in the preceding Paragraph exceed applicable major source thresholds for VOCs, and the Facility is therefore a "major stationary source" and a "major source" under the Act and the SIP.  As a "major source," the Facility is subject to the Title V operating permit requirements of the Act and 310 CMR 7.00, Appendix C.

16.     The testing data and other information obtained as a result of the 2015 RR/TO indicate that WTE's introduction of Muni materials into the shredding process in the 1991 Change was largely responsible for the measured increased VOC emissions from the Facility since 1991.

FIRST CLAIM FOR RELIEF
(Failure to Comply with Permitting and BACT Requirements under SIP)

17.     Paragraphs 1 through 16 are realleged and incorporated herein by reference.

18.     The 1991 Change constituted a "substantial reconstruction" of the Facility under the SIP that changed the amount of emissions and caused or contributed to a condition of air pollution.

19. On or before June 5, 1991, WTE implemented a substantial reconstruction of its Facility without applying for or receiving approval for such substantial reconstruction by submitting to MassDEP for approval plans, specifications, a proposed Standard Operating Procedure, and a Proposed Maintenance Procedure for the Facility, designed to control VOC emissions, as required under the SIP, 310 CMR 7.02.

20. Beginning on or before June 5, 1991, and continuing through the date of this Complaint, WTE has operated the Facility without applying for or receiving approval for substantial reconstruction by submitting to MassDEP plans, specifications, a proposed Standard Operating Procedure, and a Proposed Maintenance Procedure for the Facility, designed to control VOC emissions, as required under the SIP, 310 CMR 7.02.

21. Beginning on or before June 5, 1991, and continuing through the date of this Complaint, WTE has operated the Facility without complying with Best Available Control Technology ("BACT") requirements under the SIP, 310 CMR 7.02.

22. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject WTE to injunctive relief and assessment of a civil penalty of up to $25,000 per day for each violation, as adjusted for inflation pursuant to the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note ("Debt Collection Improvement Act"), the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 ("2015 Inflation Adjustment Act"), 28 U.S.C. § 2461 note [Pub. L.114-74, Section 701], and EPA's Civil Monetary Penalty Inflation Adjustment Rule at 40 C.F.R. Part 19 ("Penalty Inflation Rule").

## SECOND CLAIM FOR RELIEF
(Failure to Comply with RACT Control Plan Requirements under SIP)

23. Paragraphs 1-22 are realleged and incorporated herein by reference.

24. Beginning on or before June 5, 1991, and continuing through the date of this Complaint, as a result of the 1991 Change the facility had the potential to emit, prior to the application of air pollution control equipment, 25 tons per year or more of VOCs.

25. Beginning on or before June 5, 1991, and continuing through the date of this Complaint, WTE has caused, suffered, allowed or permitted emissions from the Facility in excess of an emission rate achievable through the implementation of reasonably available control technology ("RACT") as required in an emission control plan reviewed and approved by MassDEP.

26. Beginning on or before June 5, 1991, and continuing through the date of this Complaint, WTE has failed to comply with the RACT requirements for VOCs under the SIP, 310 CMR 7.18(17)(a) and (c).

27. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above in Paragraphs 23 through 26 subject WTE to injunctive relief and assessment of a civil penalty of up to $25,000 per day for each violation, as adjusted for inflation pursuant to the Debt Collection Improvement Act, the 2015 Inflation Adjustment Act, and EPA's Penalty Inflation Rule (40 C.F.R. Part 19).

## THIRD CLAIM FOR RELIEF
(RICE NESHAP Violations)

28. Paragraphs 1-27 are realleged and incorporated herein by reference.

29. The Facility includes several diesel engines, including engines bearing the designations "Engine #1," "Engine #2," and the "Emergency Engine."

30. Engine #1, Engine #2, and the Emergency Engine are stationary reciprocating internal combustion engines (RICE), as defined in 40 C.F.R. §§ 63.6585, 63.6675.

31. The Emergency Engine is an emergency stationary RICE, as defined in 40 C.F.R. § 63.6675.

32. Engine #1 and Engine #2 are each rated at about 1600 hp each, and the Emergency Engine is rated at 277 hp.

33. With respect to Engine #1 and Engine #2, from May 3, 2013 until on or about June 9, 2017, WTE failed to comply with the national emission standards for hazardous air pollutants (NESHAP) for existing stationary RICE that are located at major or area sources of HAP emissions, set forth in 40 C.F.R. Part 63, Subpart ZZZZ (RICE NESHAP), as follows:

    a. WTE failed to either limit the concentration of CO in Engines # 1 and #2 to 23 ppmvd at 15% oxygen, or to reduce CO emissions from these engines by 70 percent or more, in violation of 40 C.F.R. § 63.6603(a) and Table 2d;

    b. WTE failed to make an initial compliance demonstration for Engines #1 and #2, in violation of 40 C.F.R. § 63.6630;

    c. WTE failed to conduct initial performance tests on Engines #1 and #2, in violation of 40 C.F.R. § 63.6612; and

    d. WTE failed to demonstrate continuous compliance with each emission limitation, operating limitation, and other requirements in the applicable tables of Subpart ZZZZ, in violation of 40 C.F.R. § 63.6640(a).

34. With respect to the Emergency Engine, from May 3, 2013 until on or about March 14, 2016, WTE failed to comply with the RICE NESHAP in that WTE failed to perform required

engine inspection and maintenance on the Emergency Engine, in violation of 40 C.F.R. § 63.6603(a) and Table 2d.

35. From May 3, 2013 until on or about June 9, 2017, WTE failed to submit required notifications specified in 40 C.F.R. § 63.7 through 40 C.F.R. § 63.9, in violation of 40 C.F.R. § 63.6645.

36. From May 3, 2013 until on or about June 9, 2017, WTE failed to submit required annual and semiannual compliance reports, in violation of 40 C.F.R. § 63.6650.

37. Each of the acts or omissions described in Paragraphs 33 through 36 constitutes a violation of the national emission standards for hazardous air pollutants (NESHAP) for existing stationary RICE that are located at major or area sources of HAP emissions, set forth in 40 C.F.R. Part 63, Subpart ZZZZ.

38. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above in Paragraphs 34 through 37 subject WTE to injunctive relief and/or assessment of a civil penalty of up to $25,000 per day for each violation, as adjusted for inflation pursuant to the Debt Collection Improvement Act, the 2015 Inflation Adjustment Act, and EPA's Penalty Inflation Rule (40 C.F.R. Part 19).

### FOURTH CLAIM FOR RELIEF
(Title V Violations)

39. Paragraphs 1 through 38 are realleged and incorporated herein by reference.

40. At the time of, and because of, the 1991 Change, the Facility became a new "major source" of VOCs under the Act with potential emissions of greater than 100 tons per year and actual emission of more than 50 tons per year.

41.     Since May 15, 1996, WTE has been operating the Facility without having applied for either a Title V permit or an RES synthetic minor permit, in violation of Section 503(c) of the Act, 42 U.S.C. § 7661b(c), and 40 C.F.R. § 70.5.

42.     Since May 15, 1996, WTE has operated the Facility without a Title V operating permit or an RES synthetic minor permit, in violation of Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and 40 C.F.R. § 70.7(b).

43.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above in Paragraphs 41 and 42 subject WTE to injunctive relief and assessment of a civil penalty of up to $25,000 per day for each violation, as adjusted for inflation pursuant to the Debt Collection Improvement Act, the 2015 Inflation Adjustment Act, and EPA's Penalty Inflation Rule (40 C.F.R. Part 19).

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States of America respectfully requests that this Court:

1.     Permanently enjoin WTE from operating the Facility except in accordance with the Act and any applicable regulatory requirements;

2.     Order WTE to comply with the requirements of the MassSIP, including applying for appropriate permits;

3.     Order WTE to apply for, obtain, and comply with a Title V operating permit, as required by the Title V provisions of the Act;

4.     Order WTE to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Act and the MassSIP;

5. Assess a civil penalty against WTE of up $25,000 per day as adjusted for inflation pursuant to the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note [Pub. L.114-74, Section 701], and EPA's Civil Monetary Penalty Inflation Adjustment Rule at 40 C.F.R. Part 19;

6. Award the United States its costs and disbursements in this action; and

7. Grant such other relief as this Court deems appropriate.

Respectfully submitted,

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division


 /s/ Steven A. Keller
STEVEN A. KELLER
Trial Attorney, DC Bar No. 442219
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
PO Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 514-5465

OF COUNSEL:

HUGH W. MARTINEZ
Attorney-Advisor
U.S. Environmental Protection Agency, Region 1
Five Post Office Square
Suite 100
Boston, MA 02109-3912